**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAVARUA RESTAURANTS, INC., et al., <br><br>    Plaintiffs/Counter-Defendants, <br><br>v. <br><br>McDONALD'S USA, LLC, <br><br>    Defendant/Counterclaimant. | Case No. 19cv21-MMA (LL) <br><br> **ORDER GRANTING McDONALD'S USA, LLC'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** <br><br> [Doc. No. 28] |

Plaintiffs Tavarua Restaurants, Inc., Scarab, Inc., and Carole Casale (collectively "Plaintiffs") bring this action for declaratory and injunctive relief against Defendant McDonald's USA, LLC ("McDonald's") based on a dispute over the proposed purchase and sale of eight McDonald's franchises in San Diego County. *See* Doc. No. 1. McDonald's countersues for breach of contract and declaratory judgment. *See* Doc. No. 10. McDonald's moves for judgment on the pleadings as to its declaratory judgment counterclaim. *See* Doc. No. 28. Plaintiffs filed a response in opposition, to which McDonald's replied. *See* Doc. Nos. 29, 30. The Court took the motion under submission on the briefs pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 31. For the reasons set forth below, the Court **GRANTS** McDonald's motion.

1

## BACKGROUND

This action arises out of the attempted sale of stock in two privately held corporations which own franchise rights to eight McDonald's restaurants in San Diego county. The corporations are owned by a trust established by decedent Robin Seder (the "Seder Trust"). Prior to his death, Mr. Seder selected his friend, John Cook, to be the next owner and operator of the eight McDonald's restaurants. Upon Mr. Seder's death, successor trustee Carole Casale negotiated a Purchase and Sale Agreement ("PSA") with Cook to purchase the corporate stock for $17.5 million, and assume ownership and operation of the McDonald's restaurants. The PSA further provides, *inter alia*, that Cook will purchase an office and storage facility located in Imperial Beach, California, for "the appraised value reflected in the 2018 Appraisal reduced by 6% of such appraised value." PSA ¶ 6.9.

The terms of the individual franchise agreements entered into by Mr. Seder and McDonald's obligated Casale, in her capacity as trustee, to obtain the written consent of McDonald's prior to completing the purchase and sale of the corporate stock to Cook. Casale notified McDonald's accordingly. McDonald's chose to exercise its first option under the franchise agreements to purchase the eight franchises and related restaurant assets for a purchase price of $17.5 million. However, McDonald's refused to purchase any additional assets of the corporations unrelated to the restaurant franchises, such as the office and storage facility. Based upon McDonald's refusal to accept all of the terms and conditions of the PSA, Casale rejected McDonald's attempt to purchase the franchises. This lawsuit ensued.

Plaintiffs seek a declaratory judgment that "McDonald's failed to validly exercise its first option(s) to purchase under Section 15(c) of the Seder Franchise Agreements; and therefore, McDonald's has irrevocably waived its purchase option rights under that Section in each of the Seder franchise agreements." Pl. Compl. at 11. Plaintiffs also request that the Court enjoin McDonald's from further interfering with the execution of the PSA.

McDonald's brings two counterclaims against Plaintiffs. First, McDonald's alleges breach of the franchise agreements based on Plaintiffs' refusal to honor McDonald's first option to purchase the restaurant franchises. Second, McDonald's seeks a declaratory judgment "that it validly invoked and exercised its right" to purchase the restaurants "for the purchase price set forth in the PSA." Def. Counter Compl. at ¶¶ 35-36. McDonald's moves for judgment in its favor as to its second counterclaim for declaratory judgment.

## DISCUSSION

### 1. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The factual allegations of the nonmoving party are accepted as true. *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is properly granted when, accepting all factual allegations as true, there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotations omitted). Issues of contract interpretation are usually questions of law for the Court. *See, e.g.*, *Sheehy v. Sheehy*, 299 Ill. App. 3d 996, 1000 (1998).[1] "If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999).

### 2. Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," federal courts "may declare the rights and other legal relations of

---

[1] The franchise agreements provide that they shall be governed by Illinois law. The parties appear to agree, and Illinois courts generally honor a contract's choice-of-law provision. *See, e.g., Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004). As such, the Court will apply Illinois law in interpreting the franchise agreements at issue.

3

any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). An actual case or controversy must exist, ripe for determination, and thus lie within the court's jurisdiction under Article III of the Constitution. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). The court must then decide whether to exercise jurisdiction over the dispute. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143-44 (9th Cir. 1994). Here, Plaintiffs do not challenge the reviewability of McDonald's counterclaim. Moreover, the Court finds the contract dispute between the parties to be an actual dispute "that is sufficiently immediate to warrant the issuance of a declaratory judgment," *Principal Life Ins. Co.*, 394 F.3d at 672, and finds it appropriate to entertain McDonald's counterclaim. *See generally Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942) (setting forth factors to be considered by the court).

### 3. Analysis

McDonald's seeks a declaration of its rights and obligations under paragraph 15(c) of the franchise agreements at issue. This paragraph sets forth McDonald's option to purchase its franchises in preference to purchase by a third-party:

> Franchisee or Franchisee's representative shall, at least twenty (20) days prior to the proposed effective date, give McDonald's written notice of intent to sell or otherwise transfer this Franchise pursuant to paragraph 15(d). The notice shall set forth the name and address of the proposed purchaser and all the terms and conditions of any offer. McDonald's shall have the first option to purchase the Restaurant by giving written notice to Franchisee of its intention to purchase on the same terms as the offer within ten (10) days following McDonald's receipt of such notice. However, if McDonald's fails to exercise its option and the Restaurant is not subsequently sold to the proposed purchaser for any reason, McDonald's shall continue to have, upon the same conditions, a first option to purchase the Restaurant upon the terms and conditions of any subsequent offer.

Pl. Compl., Ex. B at 9.

McDonald's asserts that the language of this provision is unambiguous in so far as it governs the option to purchase the restaurant franchises. McDonald's argues that the

4

option does not encompass, nor is it contingent upon, the purchase, sale, or transfer of any assets unrelated to the restaurant franchises themselves. As such, McDonald's contends that it validly exercised its option under the franchise agreements when it offered to purchase the eight restaurant franchises from Plaintiffs for a purchase price of $17.5 million.

Plaintiffs agree that the language is unambiguous, but point to the requirement that the option to purchase the restaurant franchises be "on the same terms as the offer" made to the third-party purchaser. *Id*. Plaintiffs note that the terms and conditions set forth in the PSA include the purchaser's acquisition of the office and storage facility located in Imperial Beach. Plaintiffs contend that McDonald's must accept all of the terms in the PSA in order to purchase the restaurant franchises, including the contingent purchase of the Imperial Beach property.

It is a "basic principle of contract law . . . that for the exercise of an option to be valid, the acceptance must be in the precise terms of the offer *contained in the option*." *Farley v. Roosevelt Mem'l Hosp.*, 67 Ill. App. 3d 700, 703 (1978) (emphasis added). Here, a valid exercise of the option to purchase the restaurant franchises requires McDonald's to give "written notice to Franchisee of its intention to purchase on the same terms" as the third-party offer. Pl. Compl., Ex. B at 9. On December 11, 2018, McDonald's notified Plaintiffs in writing as follows: "Pursuant to Section 15(c) of Mr. Seder's Franchise Agreements for the Restaurants, McDonald's hereby exercises its First Option to Purchase the franchises for, and assets of, the Restaurants on the same terms as set forth in the [PSA]." Pl. Compl., Ex. C., Attachment. McDonald's provided this written notice within one week of receiving notice from Plaintiffs of "all the terms and conditions" material to the purchase of the restaurant franchises.[2] McDonald's notice

---

[2] Plaintiffs argue that because Casale provided McDonald's with notice of the PSA on November 26, 2018, McDonald's notice was untimely in light of the ten-day window set forth by paragraph 15(c) of the franchise agreements. However, Plaintiffs attach correspondence to their complaint demonstrating that Casale did not provide adequate documentation of "all the terms and conditions" of the PSA

5

therefore "constituted a timely, effective exercise of the option and gave rise to a binding contract of purchase." *Wentcher v. Busby*, 98 Ill. App. 3d 775, 783 (1981).

Plaintiffs argue that McDonald's should not be permitted to "cherry-pick," agreeing to some but not all terms of the PSA. Pl. Compl. ¶ 29. Plaintiffs' primary complaint involves McDonald's refusal to purchase the office and storage facility. However, the additional terms and conditions in the PSA regarding the Imperial Beach property are outside the scope of the franchise agreements. The franchise agreements set forth the terms of the option, which concerns the purchase of the restaurant franchises – nothing more. Accordingly, "[t]he option, when accepted, resulted in a present contract for the sale" of the restaurant franchises only. *Welsh v. Jakstas*, 401 Ill. 288, 297 (1948). And while "[t]here is nothing in the option which prevents the parties from entering into additional covenants and agreements concerning the details of the sale or matters incidental to the sale, or from incorporating such additional covenants and agreements into the written contract," *id.*, there is also nothing in paragraph 15(c) of the franchise agreements which requires McDonald's to do so.

In sum, McDonald's option to purchase is governed by the franchise agreements, not the PSA. The inclusion in the PSA of "additional covenants and agreements" unrelated to the purchase of the restaurant franchises has no legal effect on McDonald's valid exercise of the option. Accordingly, McDonald's is entitled to judgment in its favor on its second counterclaim.

---

relevant to the purchase of the restaurant franchises until December 4, 2018 (despite being asked to do so on November 29, 2018). *See* Pl. Compl., Ex. C. The relevant documents include several exhibits attached to the PSA and incorporated by reference therein. At least one of those exhibits, Exhibit H, contains information bearing directly on the purchase price of the restaurants. *See* Pl. Compl., Ex. A at 9 (PSA § 4.7) ("The amount of each and every indebtedness resulting from any mortgage, lease, pledge, lien, security interest, or encumbrances of any nature *is listed on Exhibit H which amount shall be deducted from the PURCHASE PRICE*."). The purchase price of the restaurant franchises constitutes an essential term of the offer and is material to McDonald's exercise of its purchase option. Therefore, McDonald's was not obligated to notify Plaintiffs of its election any sooner than ten days after receipt of the requested documentation.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** McDonald's motion for partial judgment on the pleadings. The Court **DECLARES** that McDonald's validly exercised its option to purchase the eight restaurant franchises at issue and is therefore entitled to purchase said restaurant franchises for the purchase price set forth in the PSA.

**IT IS SO ORDERED**.

DATE: August 16, 2019

_____
HON. MICHAEL M. ANELLO
United States District Judge